ORDERED.

Dated: September 15, 2021

*Karen S. Jennemann*
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re<br><br>Universal Towers Construction, Inc.,<br><br>    Debtor.<br>_____<br><br>Constrazza International Construction, Inc,<br><br>    Plaintiff,<br>vs.<br><br>Universal Towers Construction, Inc., and Universal Towers Investimentos E Participacoes, LTDA,<br><br>    Defendants.<br>_____ | Case No. 6:20-bk-03799-KSJ<br>Chapter 11<br><br><br><br><br><br>Adversary No. 6:20-ap-00115-KSJ |

**MEMORANDUM OPINION GRANTING SUMMARY JUDGMENT
IN FAVOR OF CONSTRAZZA INTERNATIONAL CONSTRUCTION, INC.**

A former shareholder, Constrazza International Construction, Inc. ("Constrazza"), seeks summary judgment[1] against the sole remaining shareholder, Universal Towers Investimentos E Participacoes, LTDA ("UTI")[2] and the Debtor in this Chapter 11 case, Universal Towers Construction, Inc. ("UTC"). During a preliminary oral ruling,[3] in the alternative to my ruling in the Main Case (No. 6:20-bk-03799-KSJ), I granted Constrazza's motion, concluding Constrazza holds claims superior to UTI under an equitable subordination theory under § 510(c) of the Bankruptcy Code.[4] This written order supplements the Oral Ruling made on July 14, 2021.

Since UTC was formed in 1998, the two shareholders, Constrazza and UTI have feuded. In 2015, UTI, who controlled the Debtor, unjustifiably reduced Constrazza's equity interests from 35% to 3% and then directed UTC to redeem Constrazza's shares under section 607.146(1) of the Florida Statutes. Constrazza then sued UTC and UTI in Florida State Court for a money judgment and attorneys' fees.[5]

After five years of scorched earth litigation between the fighting shareholders, on March 13, 2020, the Florida State Court issued a Final Judgment finding that UTI improperly reduced Constrazza's shares from 35% to less than 3%, restored Constrazza's rightful shares, and enforced UTC's election to redeem or purchase

---

[1] Doc. No. 17. All "Doc. No." citations refer to pleadings filed in Adversary Proceeding 6:20-ap-00115-KSJ unless otherwise noted.
[2] UTI's Response is located at Doc. No. 40.
[3] Fed. R. Bankr. P. 7052.
[4] Unless otherwise stated, all references to the Bankruptcy Code refer to Title 11 of the United States Code.
[5] Doc. Nos. 132 and 143 in Main Case, No. 6:20-bk-03799-KSJ; *Constrazza Int'l Constr., Inc. v. Universal Towers Constr., Inc., et. al.*, No. 2015-CA-008342-A001OX (Fla. 9th Cir. Ct. filed Sept. 4, 2015).

Constrazza's 35% share of UTC's equity interests. The Florida State Court also listed numerous improper and inequitable acts of UTI assisted by the Debtor including "a myriad of violations of the shareholder agreement, By-laws and pre-existing loan agreements."[6]

The Florida State Court then liquidated the value of Constrazza's 35% interest in UTC, converting its equity interest to a fixed debt. The "fair value" of Constrazza's shares "as of the day before the date on which the petition for judicial dissolution was filed" (September 3, 2015) was $135,857.54 per share.[7] Doing the math, the "fair market value" of Constrazza's 70.70 shares of UTC common stock, therefore, was liquidated into a fixed amount of $9,605,128.40, as of September 3, 2015.[8]

The Florida State Court later issued its Supplement to Final Judgment Awarding Prejudgment Interest.[9] The Florida State Court added $2,067,515.41 in statutory pre-judgment interest, for a total award of $11,672,643.81. (The Florida State Court reserved ruling on Constrazza's attorneys' fees claim, which remains pending and unliquidated in this bankruptcy case.[10]) But the bottom line is that UTC undisputedly owes Constrazza at least $11,672,643.81[11] and possibly as much as $5.5

---

[6] Doc. No. 132-1 in Main Case, No. 6:20-bk-03799-KSJ.
[7] Doc. No. 132-1 in Main Case, No. 6:20-bk-03799-KSJ.
[8] Doc. No. 132-1 in Main Case, No. 6:20-bk-03799-KSJ.
[9] Doc. No. 132-2 in Main Case, No. 6:20-bk-03799-KSJ.
[10] Doc. Nos. 249 and 351 in Main Case, No. 6:20-bk-03799-KSJ.
[11] This amount does not factor in any payments made or any interest accumulated since March 14, 2020.

million more for Constrazza's legal fees.[12] The Florida State Court orders are final and non-appealable.

Rather than pay Constrazza, UTC voluntarily filed for Chapter 11 bankruptcy on July 3, 2020.[13] Constrazza submitted two proofs of claim in this bankruptcy case: (i) Claim No. 5 for $11,293,431.88,[14] based on the State Court Final Judgment; and (ii) Claim No. 7 for $5.5 million, based on Constrazza's asserted but disputed attorneys' fees. The disputes resolved in this Chapter 11 case all revolve around permutations of the continuing feud between the divorcing shareholders—Constrazza and UTI.

The Debtor previously operated a large hotel in the Orlando tourist corridor. With the market decline caused by the recent COVID pandemic and sudden lack of guests and revenue, UTC proposed to sell the hotel in a liquidating Chapter 11 Plan (the "Plan").[15] The Debtor's marketing and sale efforts succeeded. The hotel ultimately sold for $35.7 million,[16] with the Liquidating Trustee holding sufficient funds to pay *all* creditors, including Constrazza, and provide a recovery to UTI, the remaining shareholder.

---

[12] This is the amount of legal fees requested in Constrazza's Claim No. 7. Constrazza's entitlement to these fees and the liquidation of their amount remains unresolved.
[13] Doc. No. 1 in Main Case, No. 6:20-bk-03799-KSJ.
[14] This amount reflects a May 5, 2020 payment of $500,000 and interest. Based on Constrazza's exhibit to its Claim, Claim No. 5 appears to include interest calculated through May 9, 2020.
[15] Doc. Nos. 239 and 267 in Main Case, No. 6:20-bk-03799-KSJ.
[16] Doc. No. 316 in Main Case, No. 6:20-bk-03799-KSJ.

The Plan, confirmed on March 25, 2021,[17] pays general unsecured creditors 100% of their claims in Class 3. With Constrazza's consent, two sub-classes exist—Class 3A consists of all allowed general unsecured claims *other than* any allowed unsecured claim of Constrazza; Class 3B consists of all allowed unsecured claims of Constrazza *that are not subordinated § 510(b) Claims*. Class 3B claims will receive distributions "remaining after payment in full of all Class 3A Claims."[18] So, Constrazza agrees it should be paid *after* general unsecured creditors but before UTI receives distributions as the sole remaining shareholder. In a related Order Allowing Claims of Constrazza, simultaneously entered, I concluded Constrazza's claims are Class 3B claims and are not subordinated under § 510(b).

Before knowing if its claims were allowable as Class 3B claims, Constrazza filed this adversary proceeding and its Motion for Summary Judgment alternatively seeking equitable subordination of UTI's equity position under § 510(c).[19] UTI opposes summary judgment and equitable subordination, arguing subordination is inappropriate and factual disputes exists that UTI engaged in any inequitable conduct that injured Constrazza.[20] I disagree and, alternatively find that, even if Constrazza's claims were paid in Class 4 of the Plan, UTI's position and its entitlement to distributions are inferior to the claims of Constrazza under § 510(c).

### Constrazza Holds a Claim Superior to UTI Under § 510(c)

---

[17] Doc. No. 315 in Main Case, No. 6:20-bk-03799-KSJ.
[18] Doc. No. 315 in Main Case, No. 6:20-bk-03799-KSJ.
[19] Doc. Nos. 1 and 17.
[20] Doc. No. 40.

Section 510(c) of the Bankruptcy Code states:

Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may-- (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or (2) order that any lien securing such a subordinated claim be transferred to the estate.[21]

Binding Eleventh Circuit precedent holds that equitable subordination is proper where three elements are established: (1) that the claimant has engaged in inequitable conduct; (2) that the conduct has injured creditors or given unfair advantage to the claimant; and (3) that subordination of the claim is not inconsistent with the Bankruptcy Code.[22] "Where the claimant is an insider or a fiduciary, the trustee bears the burden of presenting material evidence of unfair conduct. Once the trustee meets his burden, the claimant then must prove the fairness of his transactions with the debtor or his claim will be subordinated."[23]

UTI was an insider. And, based on the findings of fact by the Florida State Court, UTI has engaged in inequitable conduct.[24] As the Honorable Keith A. Carsten stated in a lengthy written ruling, the dilution of Constrazza's ownership was

---

[21] 11 U.S.C. § 510(c).
[22] *Estes v. N & D Props. (In re N & D Props., Inc.)*, 799 F.2d 726, 731 (11th Cir. 1986).
[23] *Id.* (citation omitted).
[24] "The general principle of *res judicata* prevents the relitigation of issues and claims already decided by a competent court. 'Once a party has fought out a matter in litigation with the other party, he cannot later renew that duel.' *Res judicata* comes in two forms: claim preclusion (traditional 'res judicata') and issue preclusion (also known as 'collateral estoppel')." *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1263 (11th Cir. 2011) (quoting *Cmm'r v. Sunnen*, 333 U.S. 591, 598, 68 S. Ct. 715, 719 (1948)). "In considering whether to give preclusive effect to state-court judgments under *res judicata* or collateral estoppel, the federal court must apply the rendering state's law of preclusion." *Id.* (citing *Kizzire v. Baptist Health Sys., Inc.*, 441 F.3d 1306, 103 (11th Cir. 2006); *Agripost, Inc. v. Miami-Dade Cnty., ex. rel. Manager*, 195 F.3d 1225, 1229 n.7 (11th Cir. 1999)). The Florida State Court judgment was a result of the same facts, occurrences, and transactions that are the basis of this Adversary Proceeding. The Defendants actively participated in the litigation; thus, the judgment of the Florida State Court is entitled to *res judicata* finality.

"unauthorized and invalid for a myriad of violations of the shareholder agreement, By-laws and pre-existing loan agreement."[25] UTI has injured Constrazza, giving itself a clear unfair advantage by improperly reducing Constrazza's ownership from 35% to less than 3%.

And the subordination of UTI's claim is consistent with the Bankruptcy Code. During the five years between when Constrazza's equity interest became a fixed debt obligation (September 2015) and the bankruptcy petition date (July 2020), UTI had all the potential upside. UTI exercised exclusive control of UTC to the detriment of Constrazza's interest. Constrazza had no ability to get current financial information or participate in the management of UTC's business. UTI fought Constrazza at every step in its scorched earth litigation in Florida State Court, all to try to unfairly reduce Constrazza's interest to the benefit of UTI. This is neither fair, equitable, or consistent with the principles of bankruptcy distribution that tries to equally distribute funds to similarly situated parties, not reward bad actors.

As an alternative to ruling in the Main Case finding Constrazza's claims are allowed in Class 3B and are not subordinated under § 510(b), I now conclude that, even if Constrazza's claims are allowed in Class 4, Constrazza holds claims superior to UTI under an equitable subordination theory under § 510(c). Constrazza is entitled to summary judgment against the Defendants.[26]

---

[25] Doc. No. 132-1 in Main Case, No. 6:20-bk-03799-KSJ.
[26] UTC filed a Motion to Dismiss Party, arguing that the complaint fails to state a cognizable claim for relief against it because, if Constrazza prevails, no additional ancillary relief against UTC would be required. Doc. No. 24. The Court, having decided that Constrazza is entitled to summary judgment, denies the Motion to Dismiss.

A separate Final Judgment consistent with this Memorandum Opinion shall issue.

###

Attorney Eric N Assouline will serve a copy of this order on interested parties who are non-CM/ECF users and file a proof of service within 3 days of entry of the order.